UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MELISSA ROSA,

                   Plaintiff,              **MEMORANDUM & ORDER**
                                            19-CV-1433 (RPK)

      v.

COMMISSIONER OF SOCIAL SECURITY,

                   Defendant.
-------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

       Plaintiff Melissa Rosa challenges the Commissioner of Social Security's determination

that she is ineligible for Supplemental Security Income ("SSI") benefits because she is not

disabled.   Plaintiff and the Commissioner each moved for judgment on the pleadings under

Federal Rule of Civil Procedure 12(c).   For the reasons below, plaintiff's motion is denied, and

the Commissioner's motion is granted.

## BACKGROUND

**I.**      **Eligibility Review for Supplemental Security Income Applications**

       SSI benefits are available to "disabled" people.   42 U.S.C. § 1381 *et seq.*   A person is

"disabled" when:

> [s]he is unable to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be expected to
> result in death or which has lasted or can be expected to last for a continuous
> period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A).   The "impairment" must stem from "anatomical, physiological or

psychological abnormalities which are demonstrable by medically acceptable clinical and

laboratory diagnostic techniques."   *Id.* § 1382c(a)(3)(D).

The Commissioner determines whether a claimant meets the statutory definition of "disabled" in five steps. If "an individual is found to be disabled (or not) at any step, the Commissioner is not required to proceed to the next step." *Williams v. Apfel*, 204 F.3d 48, 49 (2d Cir. 1999) (citing 20 C.F.R. § 404.1520(a)). The five-step disability analysis proceeds as follows:

- **Step One.** The Commissioner must first determine that the claimant is not "presently employed." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999); *see* 20 C.F.R. §§ 404.1520(b), 416.920(b).

- **Step Two.** If the claimant is not employed, the Commissioner must then determine that the claimant has a "severe impairment" that limits his or her capacity to work. *Brown*, 174 F.3d at 62; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).

- **Step Three.** If the Commissioner finds the claimant has a severe impairment, the Commissioner next considers whether "the claimant has an impairment that is listed in Appendix 1" to 20 C.F.R. Part 404, Subpart P. *Brown*, 174 F.3d at 62; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d). When the claimant has a listed impairment, the Commissioner will deem the claimant disabled and conclude the disability analysis. *Brown*, 174 F.3d at 62; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

- **Step Four.** If the claimant does not have a listed impairment, the Commissioner must determine whether "the claimant possesses the residual functional capacity to perform [his or] her past relevant work." *Brown*, 174 F.3d at 62; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e).

- **Step Five.** Finally, if the claimant is unable to perform his or her past relevant work, or does not have any past relevant work, the Commissioner determines whether "the claimant is capable of performing any other work." *Brown*, 174 F.3d at 62; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden of proof for this analysis lies with the claimant for the first four steps of the inquiry but shifts to the Commissioner for the final step. *Brown*, 174 F.3d at 62. Even when the claimant bears the burden of proof, the Commissioner has an affirmative duty to develop the record because the review process is "essentially non-adversarial." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009); *see Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Failure by the Commissioner to "fully develop[] the factual record" constitutes "legal error." *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999).

As the Commissioner proceeds through the five-step analysis, he is also required to consider four categories of evidence. *Brown*, 174 F.3d at 62. These categories are (**i**) "the objective medical facts"; (**ii**) "diagnoses or medical opinions based on such facts"; (**iii**) "subjective evidence of pain or disability testified to by the claimant or others"; and (**iv**) "the claimant's educational background, age, and work experience." *Ibid.* (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)).

## II.      Plaintiff's Supplemental Security Income Application

Plaintiff applied for SSI benefits on January 28, 2016. Certified Administrative Record ("AR") 160-68. In her application, plaintiff alleged that she became disabled on May 1, 2015, and indicated that several physical limitations—herniated discs in the spine, sciatica, numbness in the arms and legs, allergies, speech problems, and a thyroid condition—prevented her from working. AR 179. Plaintiff's application then wound its way through the Social Security Administration's review system. Before reaching a decision on her claim, the Social Security Administration directed plaintiff to obtain consultative examinations on the ground that the medical and non-medical evidence plaintiff had previously supplied was "not sufficient to support a decision on the claim." AR 90. Plaintiff was examined by internist Dr. Shannon Gearhart on March 24, 2016, AR 307, and by ophthalmologist Dr. Joseph Sturm on April 21, 2016, AR 316. After receiving these treatment reports, the Social Security Administration initially denied plaintiff's application on May 6, 2016, finding that she was not disabled and that plaintiff's "condition is not severe enough to keep [her] from working." AR 102; *see* AR 97-103.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 104-06.

III.        **The Administrative Hearing**

ALJ Sommattie Ramrup presided over the administrative hearing on November 30, 2017. AR 63-87, 125.  At the hearing, plaintiff testified that a home attendant and plaintiff's 28-year-old son are responsible for caring for her children.  AR 74.  The ALJ asked plaintiff to reconcile this statement with plaintiff's treatment notes, which indicated that plaintiff is the primary caregiver for her children.  AR 76.  Plaintiff testified that she supervises her children's care by instructing others who then execute those instructions.  AR 74-76.  Plaintiff testified that she could get dressed and shower by herself and could cook independently, but needs help with cleaning, shopping, and laundry.  AR 77.  She testified that she took the subway to her hearing, but that when she cannot find a seat on the train, traveling by subway is difficult and painful for her.  AR 78, 80.  Plaintiff testified that she could walk "[a]bout a block or block-and-a-half" without the help of a cane or similar device, stand for about 10 minutes, sit for about five minutes, and lift or carry five pounds.  AR 78-79.

After plaintiff's testimony concluded, the ALJ solicited testimony from a vocational expert about plaintiff's employment prospects.  AR 82-86.  The ALJ asked the vocational expert whether jobs exist in the national economy for an individual with plaintiff's education, work experience, and residual functional capacity ("residual functional capacity").  *Ibid.*  In describing plaintiff's residual functional capacity, the ALJ instructed the vocational expert to assume that plaintiff could (i) "perform simple, routine, light work"; (ii) "occasionally climb stairs and ramps, but can never climb ladders, ropes or scaffolds"; (iii) "occasionally balance, stoop, kneel, crouch and crawl"; (iv) "frequently reach, handle and finger with her bilateral upper extremities"; and (v) "tolerate occasional exposure to pulmonary irritants such as dust, odors and fumes."  AR 82.  The ALJ further instructed the vocational expert to assume that plaintiff could

4

*not* (i) "work in temperature extremes"; (ii) "perform a job that requires fine visual acuity, depth perception or field of vision"; or (iii) "work on uneven terrain." *Ibid.*

The vocational expert replied that an individual with that residual functional capacity could perform multiple occupations available in the national economy. AR 83. As examples, the vocational expert named three occupations classified at the light exertional level and three at the sedentary exertional level. AR 83-85. Specifically, the vocational expert opined that plaintiff could perform the sedentary occupations of addresser, sorter, and stuffer, all of which are classified as unskilled. *Ibid.*

The ALJ then modified the hypothetical and instructed the vocational expert to also assume that plaintiff "could tolerate occasional exposure to supervisors and co-workers and no exposure to the general public." AR 85. The vocational expert first replied that the modification would not change his assessment that the plaintiff could perform the same three sedentary occupations because they were unskilled roles and "occupations where you're not really working in tandem with . . . other coworkers." *Ibid.* But the vocational expert added, "just for the sake of fairness," that the further restriction could render plaintiff ineligible for half of the available addresser, sorter, and stuffer positions in the market. *Ibid.*

## IV.    The ALJ's Fact-Finding and Decision

The ALJ issued a decision on February 27, 2018. AR 17, 32. The ALJ concluded that plaintiff was not disabled under the Social Security Act and denied her application for SSI benefits. AR 20-32. In reaching that decision, the ALJ proceeded through the five-step analysis set forth in 20 C.F.R. § 416.920 and considered the hearing testimony and plaintiff's extensive treatment records, which are summarized below.

## A. Physical Health Evaluations

Plaintiff was forty-five years old on her alleged onset date of disability and forty-six years old on the date of her application for SSI benefits. AR 73, 160. Plaintiff completed the ninth grade, did not earn a GED, and has never engaged in substantial gainful employment. AR 22, 75, 180. Plaintiff visited the Community Healthcare Network in September 2014 and in April 2015 for a thyroid check after she complained of hunger and tiredness. AR 225-305. Plaintiff was prescribed Synthroid, which controlled her hypothyroidism symptoms, AR 253, and in June 2015 was referred to physical therapy after reporting that she had gone to the emergency room because of her back pain and leg numbness, AR 249.

Plaintiff began physical therapy on July 27, 2015. AR 351. She described having pain radiating throughout her body, which she rated as a five out of ten, and reported having difficulty walking, standing, and/or sitting for prolonged periods, as well as lifting and bending. *Ibid*. The physical therapist indicated that physical therapy would address her radiating lower back pain and that plaintiff's motor strength in her upper/lower extremities was good. AR 352. Plaintiff attended physical therapy through November 2017. AR 416-86.

In July 2015, plaintiff was referred to an orthopedist for complaints of persistent back pain. AR 242-44. She reported a family history of neck issues and received a nutritional assessment. *See ibid.*

In August 2015, plaintiff presented with complaints of back pain aggravated by prolonged standing. A physical examination revealed "decreased flexion and paraspinal muscle tension in the lumbar spine," but a normal range of motion. AR 295. Plaintiff was diagnosed with lumbosacral neuritis. AR 291. An MRI of her lumbar spine taken in August 2015 revealed "mild to moderate multilevel degenerative changes within the mid to lower lumbar spine." AR 282-83. The MRI also identified "mild diffuse bulges" at L3-L4 and L5-S1, which contributed

6

to "mild central canal stenosis" and "mild bilateral neutral foraminal narrowing." *Ibid*.  At a follow-up examination later that month, plaintiff described the severity of her lower back pain as an eight out of ten on a pain scale and reported that the pain radiated from her thighs to her feet, with numbness, stiffness, tingling, and weakness.  AR 294-95.  Plaintiff declined to take any medication for her pain.  AR 295.

Plaintiff was examined again in September 2015 and received referrals to a rheumatologist and a neurologist for disc bulges, aphasia, and rheumatoid arthritis.  AR 234-40.  In November 2015, plaintiff was seen by a rheumatologist at Mount Sinai Beth Israel for her back pain as well as her hand stiffness and tightness.  AR 284-85.  In the same month, plaintiff visited the Community Healthcare Network and was diagnosed with chronic fatigue.  AR 227.

In January 2016, plaintiff was seen by a neurologist and orthopedist, who recommended surgery to correct her canal stenosis and disc herniations.  AR 225.  Plaintiff indicated that she wanted a second opinion.  *Ibid.*

In March 2016, plaintiff underwent an X-ray of the right hand and fingers, which revealed no significant abnormality.  AR 311.  An X-ray of her lumbar spine revealed scoliosis. *Ibid.*

In November 2017, plaintiff underwent a neurological evaluation by Dr. Igor Khelemsky, M.D.  AR 496-501.  Dr. Khelemsky noted that plaintiff's muscle power and sensation were slightly decreased in the lower extremities, and that her muscle tone was moderately increased in the lower extremities and normal in the upper extremities.  *See ibid*.  Dr. Khelemsky further noted that plaintiff's sensation to pain, temperature, vibration, and light touch was normal, as were her limb coordination, balance, and gait.  *See ibid*.  An examination of plaintiff's cervical and lumbar spine showed tenderness, muscle spasm, and decreased mobility.  *See ibid*.

### B. Consultative Examinations

On March 24, 2016, plaintiff attended a consultative examination with Dr. Shannon Gearhart, M.D.  AR 307.  In her account to Dr. Gearhart, plaintiff indicated that lifting or carrying anything over five pounds worsened her pain, that she could stand for ten minutes before needing to sit down, and that she could sit for fifteen to twenty minutes before needing to shift positions.  *Ibid*.  She told Dr. Gearhart that she cooks independently three times a day, does laundry every other day, and shops daily, but that these activities aggravate her pain.  AR 309-10.  Plaintiff told Dr. Gearhart that she cares independently for an autistic child.  *Ibid*.  Plaintiff also told Dr. Gearhart that physical therapy had improved her pain in the past and that she planned to resume physical therapy.  AR 307.

Dr. Gearhart determined that plaintiff was not in acute distress; her gait was normal; she had a full range of motion in her shoulders, elbows, forearms, wrists, knees, and ankles bilaterally; her hand and finger dexterity was intact; and her grip strength was five of five.  AR 310-11.  Dr. Gearhart diagnosed plaintiff with neck and lower back pain, bilateral carpal tunnel syndrome and rheumatoid arthritis by report, hypothyroidism, asthma, and poor visual acuity, but determined that plaintiff had a stable prognosis.  AR 311-12.  Dr. Gearhart indicated that plaintiff should avoid smoke, dust, extreme heat, extreme cold weather, and other known respiratory irritants.  *See ibid.*  Dr. Gearhart opined that plaintiff had "marked" limitations for activities requiring fine visual acuity, heavy lifting, carrying, bending, or crouching.  *See ibid.*  She further opined that plaintiff had "moderate" limitations for pushing, pulling, repetitive stair climbing, and prolonged walking, standing, and sitting.  *See ibid.*  And she opined that plaintiff had "mild" limitations for activities requiring fine manipulation and repetitive movements of both hands.  *Ibid*.  The ALJ gave "great weight" to Dr. Gearhart's opinion because it was "supported with explanation" and "consistent with the medical evidence of record."  AR 29.

On April 21, 2016, plaintiff presented to ophthalmologist Joseph Sturm, M.D., for a consultative examination.  AR 316.   Dr. Sturm opined that plaintiff had possible amblyopia, decreased visual acuity, and congenital anomalies of the optic nerve, all in the left eye.  AR 316-17.  The ALJ gave "great weight" to this opinion because it was "from a specialist," "based on an examination of [plaintiff]," and "consistent with the medical record in the evidence."  AR  29.

## C.  Mental Health Evaluations

Plaintiff also alleges that she is entitled to disability benefits based on mental limitations for which she has sought evaluation and treatment.

On December 19, 2016, plaintiff saw Sheindel Goldberger, a licensed master social worker ("LMSW"), at Interborough Development & Consultation Center ("IDCC"), reporting that beginning in the spring of 2016 she had experienced anxiety and panic attacks related to caring for her two minor children, one of whom is autistic and the other of whom has mild developmental disabilities.  AR 332-33.  Plaintiff indicated that she had received prior treatment at IDCC in 2012 for anxiety after a break-up, and that her symptoms had subsided.  AR 333. Plaintiff also reported having strong friendships with at least two people, and that she enjoys dancing, going out, and spending time with her children in the park.  AR 340.

Goldberger examined plaintiff and, in her treatment notes, wrote that plaintiff appeared mildly depressed and moderately anxious but otherwise exhibited full affect; normal speech, thought processes, and perception; and average intelligence.  AR 340-44.  Goldberger diagnosed plaintiff with mild major-depressive disorder and panic disorder and recommended weekly therapy and medication as needed.  AR 346-47.  Goldberger indicated that plaintiff did not meet the Social Security Administration's criteria to be considered an adult diagnosed with a severe and persistent mental illness.  AR 347-48.

On February 7, 2017, plaintiff returned to the IDCC to see psychiatric nurse practitioner ("PNP") Lorna Holder.  AR 323.  At this visit, plaintiff reported that she is the caregiver of two school-age and two adult children with whom she lives, and that she is able to go out independently to perform activities of daily living but that she experiences anxiety and panic attacks.  *Ibid*.  PNP Holder described plaintiff as appearing cooperative and calm, with normal speech, noted that her thought process was coherent and mood was euthymic, and observed that she exhibited good concentration, average intellectual functioning, and intact judgment.  AR 326-27.  PNP Holder concluded that plaintiff had presented with "depressive symptoms," recommended cognitive behavioral therapy, and indicated that plaintiff's "prognosis remains favorable with individual therapy and medication management."  AR 328.

On November 17, 2017, plaintiff was evaluated by Kelwin Dominguez, a mental-health counselor with a limited permit ("MHC-LP"), at IDCC.  AR 320.  Dominguez completed a form entitled "Social Security Administration Medical Source Statement of Ability To Do Work-Related Activities (Mental)," in which he indicated that plaintiff was diagnosed with "mild major depressive disorder, which has impacted her cognitive abilities. [She] has difficult[y] remembering and carrying out complex instructions."  *Ibid*.  Dominguez also determined that plaintiff was "diagnosed with panic disorder" and "experiences severe anxiety when she is around numerous individuals," and opined that it "is difficult for [her] to hold a work position."  AR 321.  Dominguez assessed plaintiff to have "marked" limitations in interacting appropriately with the public; responding appropriately to usual work situations and changes in a routine work setting; understanding, remembering, and carrying out complex instructions; and making judgments on complex work-related decisions.  AR 320.  Dominguez further determined that plaintiff had "moderate" limitations in interacting appropriately with supervisors and co-workers,

the ability to make judgments on simple work-related decisions, and "mild" limitations in understanding, remembering, and carrying out simple instructions.  AR 320-21.

### D.  The ALJ's Decision

Based on the hearing testimony and the medical record, the ALJ made the following findings:

- **Step One.**  Plaintiff has not engaged in substantial gainful activity since January 28, 2016, her application date. AR 22; *see* 20 C.F.R. §§ 404.1520(b), 416.920(b).

- **Step Two.**  Plaintiff has the following severe impairments as defined by statute: degenerative disc disease of the lumbar and cervical spine; decreased visual acuity of the left eye; asthma; and major-depressive disorder with anxiety.  AR 22; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c).  The ALJ noted that plaintiff also had the non-severe impairments of hypothyroidism, rheumatoid arthritis, and carpal tunnel syndrome.  The ALJ explained that those impairments are non-severe because they are not defined as severe by statute and because they do not "significantly" limit plaintiff's ability to work. AR 22.

- **Step Three.**  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment that would establish a presumptive disability under the regulations.  AR 23; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

  o  Plaintiff's physical impairments, taken individually and cumulatively, do not meet the criteria of severity that would establish a *per se* physical disability.  AR 23.

  o  With respect to plaintiff's mental impairments, the ALJ noted that the medical record "indicated that [plaintiff's] thought process, cognition, judgment and perception were within normal limits." AR 24.  Plaintiff's mental impairments were not severe enough, and had not lasted long enough, to establish a *per se* disability.  *Ibid*.  In particular, the ALJ found that plaintiff had only a moderate limitation in interacting with others; a mild limitation in concentration, persistence, and pace; and a mild limitation in adapting or management oneself; and that plaintiff had a greater than "minimal capacity" to adapt to changes in her environment.  *Ibid*.  In light of these findings, the severity of plaintiff's mental impairment did not meet or medically equal a presumptive disability under the regulations.  *See ibid.*

- **Step Four.**  Plaintiff has the "residual functional capacity" to perform sedentary work as defined in 20 C.F.R. § 416.967(a), "except the claimant is able to perform simple, routine light work."  AR 24; *see* 20 C.F.R. §§ 404.1520(e), 416.920(e).  Plaintiff can occasionally climb stairs and ramps, but never ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently reach, handle, and finger with her bilateral upper extremities; can tolerate occasional exposure to pulmonary

irritants, such as dust, odors, and fumes or temperature extremes; cannot perform a job that requires fine visual acuity, depth perception, or a wide field of vision; and cannot work on uneven terrain.  AR 24-25.

- **Step Five.**  After consulting the vocational expert at the administrative hearing, the ALJ concluded that plaintiff retained the ability to perform multiple sedentary jobs that existed in significant numbers in the national economy, including addresser, stuffer, and sorter. AR 31; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

Plaintiff sought review of the ALJ's decision from the Social Security Administration Appeals Council.  AR 4.  The council denied plaintiff's appeal on February 11, 2019, providing plaintiff with a final decision by the Commissioner.  AR 4-7.  Plaintiff then filed this action.

## STANDARD OF REVIEW

Claimants who are denied disability benefits by the Social Security Administration may seek judicial review.  42 U.S.C. § 405(g).  In reviewing a final decision of the Commissioner, the court does not "decide de novo whether a claimant was disabled" or take a fresh pass at the ALJ's five-step analysis under the Social Security Act.  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (citations omitted).  Instead, the court's review is limited to two areas.  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

First, the court reviews the Commissioner's decision for legal error.  *Ibid.* (citations omitted). This inquiry entails asking whether the claimant has had "a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act."  *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990).

Second, the court reviews whether "substantial evidence" supports the Commissioner's decision.  *Shaw*, 221 F.3d at 131 (citations omitted).  The Second Circuit has described substantial-evidence review as "a very deferential standard of review—even more so than the 'clearly erroneous' standard."  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).  Courts applying this standard will not

disturb the Commissioner's factual findings if a reasonable mind could find "adequate" support for them. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Nevertheless, the Commissioner's findings must be supported by more than a "mere scintilla" of evidence. *Ibid.* (citation omitted). To determine whether the Commissioner's determination is supported by substantial evidence, the reviewing court must "examine the entire record"—including "contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (citations and internal quotation marks omitted). When substantial evidence in the record supports the Commissioner's findings, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013).

After completing its review, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). Remanding to the Commissioner is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the regulations." *Rose*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016). A remand is also appropriate "[w]here there are gaps in the administrative record." *Rosa*, 168 F.3d at 82-83 (citations and internal quotation marks omitted). The court retains discretion to remand the case with or without a rehearing. 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner's motion for judgment on the pleadings is granted.  As plaintiff does not meaningfully dispute, the ALJ properly determined that plaintiff has not engaged in substantial activity since her application date; that she had several severe and non-severe impairments; and that her impairments did not meet or medically equal the severity of an impairment that would establish presumptive disability under the relevant regulations.  Plaintiff challenges the ALJ's determination of plaintiff's residual functional capacity and the ALJ's determination that plaintiff can perform jobs that exist in significant numbers in the national economy.  But as explained below, the Commissioner applied the law correctly at those steps and made factual findings that were supported by substantial evidence.  *Shaw*, 221 F.3d at 131.  Plaintiff's arguments to the contrary lack merit.

I.      **The ALJ's conclusion that plaintiff is not disabled based on her physical limitations is supported by substantial evidence.**

Contrary to plaintiff's arguments, the ALJ appropriately determined that plaintiff had the residual functional capacity to perform sedentary work, subject to certain limitations, despite her physical condition.   The ALJ also appropriately determined that despite these physical limitations, plaintiff can perform jobs that exist in significant numbers in the national economy.

A. **The ALJ determined that plaintiff could perform sedentary work with certain additional limits.**

Plaintiff first suggests that the ALJ's determination of residual functional capacity was erroneous because the ALJ "fail[ed] to make clear precisely what the plaintiff's physical capacities are."  Pl.'s Br. 8.  She notes that while the ALJ described plaintiff as having the ability to perform "sedentary work," the ALJ later stated in a single sentence that "the claimant is able to perform simple, routine *light* work."   *Ibid.* (quoting AR 24) (emphasis added); *see ibid.* ("Which is it: is the plaintiff limited to sedentary work or can she perform light work?").  In

context, however, it is clear that the ALJ concluded that plaintiff was able to perform sedentary work with additional noted limitations.  At the administrative hearing, the ALJ specifically asked the vocational expert for examples of occupations that would only require sedentary work, and the vocational expert indicated that someone with plaintiff's restrictions could perform at least three such occupations: addresser, sorter, and stuffer.  AR 81-87.  The ALJ relied only on these three occupations as evidence that there was work in the national economy that plaintiff was able to perform.  *See ibid.*; *see also* AR 29-30.  The ALJ further stated that "the record does not reflect physical limitations that would render the claimant unable to perform at least a range of *sedentary* work." AR 29 (emphasis added).  Elsewhere the ALJ stated that "the claimant's ability to perform the full range of *sedentary* work has been impeded by additional limitations," referring to plaintiff's non-exertional limitations. AR 31 (emphasis added).  The decision as a whole thus makes clear that the ALJ determined that plaintiff retained the residual functional capacity to perform simple, routine sedentary work.

### B.  The ALJ's determination was supported by substantial evidence.

Substantial evidence supported the ALJ's conclusion that plaintiff had the residual functional capacity to perform sedentary work—the category of work requiring the least physical exertion under the regulations—with additional limitations.  AR 31; *see* AR 82-85.  The Social Security Administration defines sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).  The ALJ set out additional limitations on plaintiff's capabilities by asking the vocational expert  vocational expert if any occupations would be available to someone

who could perform only sedentary work with the additional limits that the person could "occasionally climb stairs and ramps, but [could] never climb ladders, ropes or scaffolds," could "occasionally balance, stoop, kneel, crouch and crawl," could "frequently reach, handle and finger with her bilateral upper extremities," and could "tolerate occasional exposure to pulmonary irritants such as dust, odors and fumes."  AR 82-84.  The ALJ also asked the vocational expert to assume that plaintiff could not "work in temperature extremes," "perform a job that requires fine visual acuity, depth perception or field of vision," or "work on uneven terrain," and could only "tolerate occasional exposure to supervisors and co-workers and no exposure to the general public."  AR 82, 85.

Plaintiff errs in contending that these conclusions regarding her residual functional capacity are not supported by substantial evidence because they are contrary to Dr. Gearhart's analysis.  Pl.'s Br. 9.  As an initial matter, the ALJ was not required to adopt in the entirety the conclusions of Dr. Gearhart—a physician with whom plaintiff did not have a treating relationship, and who examined plaintiff only once on a consultative basis.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an residual functional capacity finding that was consistent with the record as a whole.") (citation omitted); *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) ("There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations . . . ."); *see* 20 C.F.R. § 416.927(c) (setting out factors to be considered in deciding the weight to give to any medical opinion).

Here, ample record evidence beyond Dr. Gearhart's opinion supported the conclusion that plaintiff did not suffer from "disabling impairments" but was instead able to do "some level

of work on a regular and continuing basis." AR 29.   In particular, as the ALJ noted, plaintiff testified that she cares for four minor children and took the subway to her hearing and could handle cooking, cleaning, and shopping with some assistance.  AR 27-30.  And multiple medical sources noted that plaintiff had a full range of motion, decent grip strength, and normal gait, was in no acute distress, and had a favorable prognosis with treatment.  *See ibid.*  The ALJ therefore concluded that the record as a whole "does not reflect physical limitations that would render the claimant unable to perform at least a range of sedentary work."  AR 29.  Courts in this circuit have found no legal error where an ALJ finds that a claimant is not disabled in light of record evidence of a claimant's daily functioning.  *See, e.g.*, *Barry v. Colvin*, 606 F. App'x, 621, 623-24 (2d Cir. 2015) (affirming ALJ's residual functional capacity determination where ALJ considered consulting physician's opinion that claimant "could not maintain a regular schedule," but determined in light of other evidence in the record, including claimant's descriptions of daily functioning to her physicians, that plaintiff was not disabled); *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an residual functional capacity finding that was consistent with the record as a whole.").

In any event, plaintiff has not identified any meaningful inconsistency between the ALJ's conclusions and Dr. Gearhart's report.  Plaintiff points to Dr. Gearhart's finding that plaintiff had "marked" limitations for carrying and bending, and "moderate" limitations for pushing, pulling, prolonged walking, standing, and sitting.  *See* Pl.'s Br. 9-10.  But plaintiff cites no authority for the proposition that a "marked" limitation for carrying is inconsistent with sedentary work— which involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 416.967(a).  As for bending, the

Social Security Administration has stated that while "[a] *complete* inability to stoop would significantly erode the unskilled sedentary occupational base, . . . a restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." SSR 96-9P. Further, the ALJ incorporated in the residual functional capacity the limitation that plaintiff could only occasionally stoop, AR 82, and plaintiff has not pointed to evidence in the record that plaintiff had a complete inability to stoop. In addition, while the ALJ's determination of residual functional capacity did not explicitly describe plaintiff's limitations in pushing and pulling, the Social Security regulations state that "[l]imitations or restrictions on the ability to push or pull will generally have little effect on the unskilled sedentary occupational base." SSR 96-9P, 1996 WL 374185 (S.S.A. July 2, 1996).

Similarly, the ALJ's determination of plaintiff's residual functional capacity was not inconsistent with Dr. Gearhart's determination that plaintiff had "moderate" limitations in prolonged walking, standing, and sitting. The ALJ asked the vocational expert to name occupations requiring only sedentary work. AR 83-84. Such occupations by definition require walking and standing only "occasionally." 20 C.F.R. § 416.967(a). And courts in this circuit have held that moderate limitations in prolonged sitting, standing, and walking are not inconsistent with an ability to perform sedentary work, especially where, as here, the record also includes evidence that plaintiff is able to perform activities of daily living that involve some walking, standing, and sitting, such as cooking, cleaning, caring for children, and taking public transportation. *See* AR 29, 309-10, 326-44; *Hill v. Berryhill*, No. 17-CV-6532P (MWP), 2019 WL 144920, at *6 (W.D.N.Y. Jan. 9, 2019) (noting that "moderate limitations in [the claimant's] ability to engage in prolonged sitting, standing and walking and moderate to severe limitations in her ability to bend and lift" were "not inconsistent with a sedentary work limitation"); *Hammond*

*v. Colvin*, No. 12-CV-965 (TJM), 2013 WL 4542701, at *6 (N.D.N.Y. Aug. 26, 2013) (finding that plaintiff's "moderate" limitations in prolonged sitting were not inconsistent with an ability to perform sedentary work, especially in light of "plaintiff's testimony regarding her activities of daily living, which included car rides and other activities (e.g. church attendance)"); *Stacey v. Comm'r of Soc. Sec.*, No. 09-CV-0638 (DNH) (VEB), 2011 WL 2357665, at *8 (N.D.N.Y. May 20, 2011) (affirming residual functional capacity determination that plaintiff could perform light work, even though consultative examiner determined that plaintiff had "moderate" limitations in bending, lifting, prolonged sitting, and prolonged standing and walking, given that plaintiff was also "able to cook, shop, and clean with mild to moderate limitations" and "had not used a cane to walk since the alleged onset date"), *report and recommendation adopted*, 2011 WL 2293328 (N.D.N.Y. June 8, 2011).

### C. The ALJ did not rely on an impermissibly vague medical opinion.

Plaintiff fares no better in arguing that remand is warranted because Dr. Gearhart's opinion used the terms "mild" and "moderate" and was therefore "so vague as to render it useless in evaluating whether . . . [a claimant can] perform sedentary work." Pl.'s Br. 9-10 (quoting *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000)). When an ALJ relies exclusively on a medical opinion that is so vague that it provides no legitimate medical guidance, the ALJ may have a duty to develop the record further. *See Curry*, 209 F.3d at 123 (remanding because the ALJ's conclusion relied on only one medical opinion, which used "the terms 'moderate' and 'mild,' without additional information"), *superseded by statute on other grounds, as recognized in Selian*, 708 F.3d at 421. But remand is not warranted when "the record contain[s] sufficient other evidence supporting the ALJ's determination and . . . the ALJ weigh[s] all of that evidence when making his residual functional capacity finding." *Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (citations omitted).

Here, the ALJ's conclusion regarding physical disability was not based on an impermissibly vague medical opinion.  First, while Dr. Gearhart's opinion uses the terms "marked," "moderate," and "mild" to describe plaintiff's physical limitations, it also contains significant detail about those limitations.  Dr. Gearhart's report indicates, and the ALJ considered, that plaintiff reported that she could perform several activities of daily living, including cooking independently three times a day, cleaning daily, doing laundry once every other day, showering and dressing herself independently daily, and walking outside.  AR 27, 309-10.  Plaintiff also told Dr. Gearhart that she cared for her autistic son independently every day.  AR 30, 310, 351.  And Dr. Gearhart's report provided further details about plaintiff's physical condition, including that plaintiff was not in acute distress; that her gait was normal; that she had a full range of bilateral motion in her shoulders, elbows, forearms, and wrists; and that she had full grip strength; but that she suffered from neck and lower back pain, among other conditions.  AR 310-12.  Dr. Gearhart's opinion therefore included more information than the medical opinions that were rejected as inadequate to support an ALJ's conclusion in *Curry*, 209 F.3d at 123, and *Selian*, 708 F.3d at 421.  *See Tudor v. Comm'r of Soc. Sec.*, No. 12-CV-2795 (SJF), 2013 WL 4500754, at *12 (E.D.N.Y. Aug. 21, 2013) ("Since Dr. Skeene's opinion was supported by 'additional information,' i.e., objective medical findings, her opinion is not vague and provided an adequate basis for the ALJ to infer that plaintiff is capable of performing the exertional requirements of sedentary work.") (citations and internal quotation marks omitted).

Second, as already discussed, the ALJ did not rely exclusively on Dr. Gearhart's opinion in determining plaintiff's physical limitations.  The ALJ cited plaintiff's own testimony that she lives in a fourth-floor walk-up apartment and was able to take the subway to her hearing.  AR 20, 79-80.  The ALJ also cited extensive treatment notes indicating that plaintiff had a normal range

20

of motion and a gait within normal limits.  AR 26-27, 249, 294-95, 401, 496.  Because the ALJ's

conclusion is supported by the record as a whole, remand is not warranted.  *See, e.g.*, *Johnson*,

669 F. App'x at 46; *see also Matta*, 508 F. App'x at 56; *Cage v. Comm'r of Soc. Sec.*, 692 F.3d

118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of

conflicting evidence.") (citation omitted); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)

("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation

omitted).

II.     **The ALJ's conclusion that plaintiff is not disabled based on her mental limitations is supported by substantial evidence.**

The ALJ's conclusion that plaintiff is not disabled based on her mental limitations is also

supported by substantial evidence.  The ALJ assessed the severity of plaintiff's mental

impairment according to the relevant regulations and found that plaintiff did not meet the criteria

for a *per se* disability.  AR 23.  The ALJ noted that two different treatment notes from the IDCC

assessed plaintiff's intelligence to be average, AR 326-27, 340-44, and that plaintiff testified that

she was able to shop, take public transit, and cook and clean with some assistance, as well as

bathe, dress, and groom herself independently, AR 23-24.  The ALJ further explained that

plaintiff was "able to care for four minor children, including one with autism and one with a

developmental delay," AR 29, and that plaintiff herself testified that she was able to perform

activities of daily living, AR 30.  Moreover, the ALJ noted that plaintiff first sought mental

health treatment in December 2016, more than a year after her disability onset date, and had no

prior psychiatric history other than an episode of anxiety in 2012 due to a break-up with her

boyfriend, with symptoms that subsided.  AR 29, 333.  The ALJ observed that plaintiff's

depression and anxiety were related to family stressors.  AR 29-30.

Plaintiff suggests that the ALJ's decision warrants remand because IDCC records indicate that plaintiff had mild major-depressive disorder, panic attacks, severe anxiety, and "marked" impairments for interacting with the public and responding appropriately to usual work situations.  *See* Pl.'s Br. 5.  While plaintiff does not point to any specific evidence from the record in support of this argument, plaintiff appears to refer to the evaluation of Kelwin Dominguez, MHC-LP, who opined that plaintiff had several "marked" limitations, *see* AR 320, and whose opinion the ALJ gave "limited weight," AR 29.  The ALJ's decision to give Dominguez's opinion limited weight was not error.  For one thing, as a mental-health counselor with a limited permit, Dominguez is not an "acceptable medical source."  *See* 20 C.F.R. § 416.913(a) (2015) (listing acceptable medical sources for applications for benefits filed before March 27, 2017).  The ALJ was therefore not required to give his opinion any weight.  *See Gove v. Saul*, No. 19-CV-6839 (JPO), 2020 WL 6712201, at *4 (S.D.N.Y. Nov. 16, 2020) (noting that "the ALJ was not required to give any weight to the opinions of Steven Phillips, a licensed mental health counselor who does not qualify as an 'acceptable medical source' under Social Security regulations"); *Feliciano v. Comm'r of Soc. Sec.*, No. 18-CV-502 (EAW), 2020 WL 1815754, at *3 (W.D.N.Y. Apr. 10, 2020) (same); *Healy v. Comm'r of Soc. Sec.*, No. 18-CV-1050L (DGL), 2020 WL 419358, at *4 (W.D.N.Y. Jan. 27, 2020) (same).

Further, the ALJ found that Dominguez's opinion was "inconsistent with treatment records," as well as plaintiff's activities of daily living and course of treatment.  AR 29, 309-10, 326-44; *see Banks v. Astrue*, 955 F. Supp. 2d 178, 191 (W.D.N.Y. 2013) (noting that ALJ properly considered that claimant was able to care for her grandchildren, socialize with family, and care for herself).  Dominguez's assessment was also inconsistent with treatment notes indicating that plaintiff's depressive disorder was "mild."  AR 29, 340; *see also* 20 C.F.R.

§ 404.1527(c)(4) (instructing an ALJ that the weight given to a medical opinion generally depends upon its consistency with the record as a whole).  And beyond the factors that the ALJ considered, nothing else in the record indicates that the ALJ failed to give Dominguez's opinion sufficient weight.  Indeed, Dominguez only evaluated plaintiff once, in November 2017, and did not have an ongoing treatment relationship with plaintiff.  *See* 20 C.F.R. § 404.1527 (2015) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").  The ALJ's conclusions about plaintiff's mental limitations were supported by substantial evidence.

## CONCLUSION

The ALJ's conclusion was legally sound and based on substantial evidence in the record.  Accordingly, plaintiff's motion for judgment on the pleadings is denied, and the Commissioner's cross-motion is granted.  The Clerk is directed to enter judgment in favor of the Commissioner and dismiss the complaint.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated: June 23, 2022
        Brooklyn, New York